## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES OWENS,                )
No. K83253,                 )
                            )
         Plaintiff,         )
                            )
      vs.                      )     Case No. 14-cv-00055-JPG
                            )
GINA ALLEN,               )
T. ANDERSON,           )
C/O ARVAI,              )
LISA ASBUSGNE DALLAS,   )
JAMES BELFORD,         )
SHERRY BENTON,         )
JOHN BUTLER,           )
CANDACE S. CHILDERS,    )
LT. COLGAN,             )
DAWAYNE COLTON,       )
SGT. DANIELS,           )
RANDY DAVIS,           )
KIM DEAN,               )
MARY DOLCE,           )
JOHN EVANS,            )
BRIAN FAIRCHILD,       )
LINDA FRITTS,           )
ROBERT GADDIS,         )
SALVADORE GODINEZ,     )
HARRIS,                 )
N. HARTMAN,           )
HENTON,                )
MARC HODGES,          )
DEBBIE ISAACS,         )
SARAH JOHNSON,        )
SHERRI JONES-LEE,      )
TONY KITTLE,           )
BRETT A. KLINDSWORTH,  )
ROBERT LUTZ,           )
JON MCDONALD,         )
JACKIE MILLER,         )
LAWRENCE MINOR,      )
CATHY MUSGRAVE,      )
COUNSELOR PHOENIX,    )
MICHAEL RANDLE,       )
JAMES ROBINSON,       )

ERIC S. RUSSELL,                                      )
MIKE SANDERS,                                         )
H. SCHULER,                                           )
J. SELBY,                                             )
JEFFERY STRUBHART,                                    )
SHANE TASKY,                                          )
TAYLOR GLADYS,                                        )
MARY TICER,                                           )
RANDY VALDEZ,                                         )
ROGER E WALKER,                                       )
SGT.WELLS,                                            )
JOHN DOE 1,                                           )
JOHN DOE 2,                                           )
JOHN DOE 3,                                           )
JOHN DOE 4,                                           )
JOHN DOE 5,                                           )
JOHN DOE 6,                                           )
JOHN DOE 7,                                           )
JOHN DOE 8,                                           )
JOHN DOE 9,                                           )
JOHN DOE 10,                                          )
JOHN DOE 11,                                          )
JOHN DOE 12,                                          )
JOHN DOE 13,                                          )
JOHN DOE 14,                                          )
JOHN DOE 15,                                          )
JOHN DOE 16,                                          )
JOHN DOE 17,                                          )
JOHN DOE 18,                                          )
JOHN DOE 19,                                          )
JOHN DOE 20,                                          )
JOHN DOE 21,                                          )
JOHN DOE 22,                                          )
JOHN DOE 23, and                                      )
ROBERT,                                               )
                                                      )
                        Defendants.                   )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff James Owens, an inmate currently housed at Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983,

presenting 21 enumerated claims against 72 defendants regarding a variety of events occurring over the span of six years (2008 to the present) at four different prisons. Plaintiff also moves for leave to file a "late complaint" (Doc. 2), aimed at avoiding dismissal based on the applicable statute of limitations.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility. *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible

that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Discussion

## The Limitations Period

On January 15, 2014, Plaintiff contemporaneously filed the complaint (Doc. 1) and a motion for leave to file a "late complaint" (Doc. 2).  Plaintiff apparently recognizes that a plaintiff can plead himself out of court based on the statute of limitations, which is usually an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 211-212, 215 (2007); *see also Kalinowski v. Bond*, 358 F.3d 978, 978 (7th Cir. 2004).  However, dismissal by the Court *sua sponte* at this early juncture is only warranted when the plaintiff's submissions reveal an airtight defense.  *See Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012); *Logan v. Wilkins,* 644 F.3d 577, 582 (7th Cir. 2011).

The applicable statute of limitations for a Section 1983 constitutional tort claim arising in Illinois is two years.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013).  As a general matter, a party's cause of action accrues when the party knows or reasonably should know of an injury and that the injury was wrongfully caused. *Clay v. Kuhl,* 727 N.E.2d 217, 220 (Ill. 2000).   With respect to continuing violations, the two-year period starts to run from the date of the last incidence of that violation, not the first.  *Heard v. Sheahan,* 253 F.3d 316, 318 (7th Cir. 2001).

The two-year period is tolled while the prisoner exhausts the administrative grievance process. *Johnson v. Rivera,* 272 F.3d 519, 521–22 (7th Cir. 2001). In addition, the limitations period may be tolled under Illinois law for equitable reasons—when filing has been delayed "in some extraordinary way." *Clay,* 727 N.E.2d at 223.

According to Plaintiff, he did not file the complaint until 2014 because of a conspiracy by Illinois Department of Corrections officials to frustrate and obstruct Plaintiff from 'filing legal paperwork"—presumably presenting the claims contained in the present compliant. Plaintiff's motion includes the following somewhat muddled chronology of events evidencing the alleged conspiracy.

Beginning in October 2008, while Plaintiff was housed at Big Muddy River Correctional Center, he was told that, despite or because he was destitute, he would only be provided with five pieces of paper per session in the law library. In 2009 when he faced an unspecified and undocumented "legal deadline," he was denied an envelope and his legal paperwork was subsequently confiscated from Plaintiff's property box and ordered to be placed in his correspondence box (not readily accessible). Several blank sheets of paper and receipts needed for a Court of Claims case were mistakenly placed in Plaintiff's excess box and destroyed, and "legal casework" was confiscated as contraband.

After being transferred to Pinckneyville Correctional Center, Plaintiff was initially denied supplies because he was not deemed indigent, and later limited to only 10 sheets of paper, two envelopes and one pen per month, which Plaintiff deemed insufficient for his needs and court requirements. Also, in December 2009, Plaintiff's call pass to the law library was cancelled. He was allowed access to law library only 10 times in six months, and denied access to 25 of 40 cases he needed. Plaintiff also missed an unspecified final deadline.

Plaintiff was transferred to Menard Correctional Center in December 2011, and was subsequently denied access to his "excess legal box" for an entire year.

Plaintiff was transferred back to Pinckneyville and an envelope full of legal case notes was confiscated because the envelope had tape on it, which is forbidden. The case notes were returned to Plaintiff in a plastic bag, but Plaintiff received a disciplinary report, landing him in segregation, where many note cards and a brief were not given to him and were later lost. Plaintiff also spent nine months in segregation and was denied a working pen, access to his legal materials and the law library.

In December 2012, Plaintiff was transferred to Lawrence Correctional Center; two of his four legal boxes were not delivered, and his cellmate stole his property and food. At Lawrence Plaintiff was allowed access to the law library only five times in seven months, and he was denied access to his excess boxes. He missed two statute of limitations deadlines and numerous court deadlines (none of which are specifically identified).

According to Plaintiff, the Administrative Review Board has failed to respond to 88 of Plaintiff's 323 grievances, and outright denied 45 grievances.

Plaintiff clearly details a series of discreet actions by prison employees over a six-year period, not a conspiracy. The many delays and obstacles cited by Plaintiff do not individually or collectively amount to the sort of extraordinary obstacle that would warrant tolling the statute of limitations, particularly not when Plaintiff's motion indicates that in December 2009 he was litigating a case before the Court of Appeals for the Seventh Circuit (*see* Doc. 2, p. 2, ¶ 4). Moreover, a review of public records reveals that Plaintiff was litigating in the federal system almost continuously between December 2008 and March 2011. *See Ownes v. Hinsley*, No. 08-3930 (7th Cir. (filed Dec. 12, 2008; dismissed March 5, 2009)); *Owens v. Hinsley*, No. 09-3618

(7th Cir. (filed Oct. 26, 2009; dismissed March 18, 2011)).   Plaintiff also filed two Section 1983 actions in this Court in June 2013:  *Owens v. Illinois Department of Corrections*, No. 13-cv-530-MJR (S.D. Ill. June 7, 2013) (regarding conditions of confinement and retaliation for filing grievances and lawsuits); and *Owens v. Illinois Department of Corrections*, No. 13-cv-594-MJR (S.D. Ill. June 21, 2013) (regarding the denial of access to the courts; the court reserved ruling on a potential statute of limitations defense).   Clearly, there is no basis for equitably tolling the statute of limitations.

The two-year limitations period is tolled while the prisoner exhausts the administrative grievance process, so the Court will look at each of the 21 counts (as enumerated in the complaint), combining the required preliminary review under Section 1915A with an analysis of the statute of limitations issue.

## Count 1

Count 1 alleges that placement officers at Big Muddy River Correctional Center celled Plaintiff with highly aggressive, mentally unbalanced and contagious inmates.  Plaintiff lodged a grievance about his cellmate in July 2009, complaining that the cellmate had threatened him and stolen property from Plaintiff's boxes.  Plaintiff's grievance was denied at every step in the administrative process, ending with the Administrative Review Board (ARB) in July 2009, which found the grievance to be incomplete.  Many additional grievances were filed between August 2009 and February 2013, all to no avail.  However, by July 7, 2010, the ARB had denied the grievance on the merits (*see* Doc. 1, p. 11, ¶ 47).  This Section 1983 action was not filed until January 2014, well over three years after the final ARB denial.  Therefore, Plaintiff is far beyond the end of the limitations period, even taking into account the period while he was exhausting his administrative remedies.  For these reasons, Count 1 will be dismissed with prejudice.

**Count 2**

Count 2 alleges that Plaintiff was issued disciplinary reports for filing emergency grievances, possessing dangerous contraband, requesting protective custody, and possessing excessive property (books). Plaintiff filed grievances regarding the underlying incidents, all of which were denied by the ARB by September 9, 2010. The complaint was not filed until January 2014, just over three years after Plaintiff completed the administrative process. Consequently, Count 2 will be dismissed with prejudice.

**Count 3**

In Count 3 Plaintiff alleges that he was denied protective custody at Pinckneyville Correctional Center after a gang member threatened him. It appears that the incident at issue occurred on or about April 24, 2011. Plaintiff filed an emergency grievance on May 8, 2011, but did not receive a response. A second grievance was ultimately denied by the ARB on September 9, 2011. Plaintiff was then transferred to Menard. The complaint was filed in December 2013, just over two years after the administrative process concluded. Therefore, this aspect of Count 3 will be dismissed with prejudice.

In the narrative portion of Count 3, Plaintiff also describes being assaulted by guards upon his arrival at Menard Correctional Center on December 21, 2011—purportedly in retaliation for filing a Section 1983 action against Menard staff in 2006, although Plaintiff describes the assailants as shouting that Plaintiff was a "baby raper" and "child molester," suggesting a different motivation. He then notes multiple assaults and denials of protective custody that occurred during the following year he was in Menard (through December 21, 2012, when he was transferred to Lawrence Correctional Center). Within the narrative regarding what occurred at Menard are allegations relating to the denial of medical care, the denial of legal

materials and "property."   There are also a few allegations regarding Plaintiff's hostile cellmate at Lawrence Correctional Center.

Although the incidents at Menard and Lawrence may not be barred by the statute of limitations, these incidents are not pleaded clearly and concisely as required by Federal Rule of Civil Procedure 8(a).  "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."  *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).  For these reasons any and all claims in Count 3 regarding incidents at Menard Correctional Center and Lawrence Correctional Center will be dismissed *without* prejudice.

## Count 4

In Count 4 it is alleged that in April 2013 Plaintiff was refused access to the prison law library and "legal copies," causing him to miss the "legal deadlines" related to his grievances. This claim will be dismissed on the merits, with prejudice.  The Constitution does not require prisons to have administrative systems for the redress of grievances.  *See Owens v. Hinsley,* 635 F.3d 950, 953–54 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 772 n. 3 (7th Cir. 2008). Therefore, interference with that administrative process is not, by itself, a constitutional violation.

## Count 5

Count 5 pertains to the denial of a trust fund statement in August 2008 at Big Muddy River Correctional Center.  Plaintiff notes that a trust fund statement is required in federal court if an inmate is seeking leave to proceed as a pauper.  *See* 28 U.S.C. § 1915(a)(1).  Although Plaintiff does not indicate that he was seeking the trust fund statement in connection with filing a particular case, he does reveal that by April 2009 he had exhausted available administrative

grievances, in that the ARB had never responded to his final effort to exhaust the denial of his grievance.[1]  Therefore, he was free to file an action in federal court at least as early as November 2009.  This action was filed in 2014, well outside the two-year limitations period.  Therefore, Count 5 will be dismissed with prejudice.

## Count 6

Count 6 alleges that, because Plaintiff could not afford a wristwatch or clock, he was unaware of the time and he missed several call passes to go to the law library.  Guards refused to alert Plaintiff of his appointments.  Count 6 is premised upon incidents on or about August 2008, but Plaintiff does not indicate why he needed to go to the law library.  Rather, he rests his claim upon the mistaken belief that the First Amendment affords him unfettered access to the law library.

The First Amendment guarantees the right to redress grievances and access the courts.  However, such a claim only arises if the plaintiff suffered "actual injury" from the inability to pursue a non-frivolous claim.  *Lewis v. Casey,* 518 U.S. 343 (1996); *May v. Sheahan,* 226 F.3d 876, 883 (7th Cir.2000); *Walters v. Edgar,* 163 F.3d 430, 434 (7th Cir.1998).  An access claim is also stated when "denial of access to legal materials caused a potentially meritorious claim to fail."  *Marshall v. Knight,* 445 F.3d 965 (7th Cir.2006).  Count 6 does not satisfy the *Twombly* pleading standard in that there is no indication why Plaintiff needed to access the law library.  Furthermore, the complaint indicates that Plaintiff had exhausted available administrative

---

[1] No action shall be brought with respect to prison conditions under Section 1983 by a prisoner until such administrative remedies as are *available* are exhausted. 42 U.S.C. § 1997e(a).  Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).  The relevant administrative grievance procedures within the Illinois Department of Corrections are prescribed at 20 Ill. Administrative Code § 504.800 *et seq.*  However, prison officials who engage in affirmative misconduct (*Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir.2006)), or fail to respond to grievances, render the grievance process *unavailable* to an inmate. *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002).

remedies by April 2009.  This action was not filed until 2014, well beyond the two-year limitations period.  Consequently, all allegations in Count 6 stemming from the 2008 incident(s) will be dismissed with prejudice.

In the narrative underlying Count 6, Plaintiff refers to multiple grievances filed from August 2008 through October 2013, suggesting that events within the two-year limitations period may also be at issue.  Plaintiff's muddled narrative does not satisfy the *Twombly* pleading standard.  Furthermore, the actual injury requirement is not waived even if systemic, continuous denials are alleged. *Ortiz v. Downey,* 561 F.3d 664 (7th Cir.2009).  These suggested issues should be considered as dismissed without prejudice.

## Count 7

Count 7 alleges that between March and April 2009, while at Big Muddy River Correctional Center, Plaintiff mistakenly placed "personal papers" in his excess legal box, rather than his correspondence box; and guards would not allow Plaintiff to keep legal materials in his property box.  Plaintiff contends that the prison property rules were not being applied correctly. The violations of internal policies and procedures, as well as state rules or laws, does not give rise to a constitutional violation.  *See Whitman v. Nesic,* 368 F.3d 931, 935 n.1 (7th Cir. 2004). Therefore, these procedural violation claims will be dismissed with prejudice.

Although the Court does not construe Count 7 as raising any additional claims, the narrative associated with Count 7 also describes incidents at Big Muddy during 2010, and during 2011, when Plaintiff was housed at Pinckneyville Correctional Center.  However, the many vague and jumbled allegations do not conform to the pleading standards under Rule 8 or *Twombly*.  Furthermore, there is no indication of actual injury, so no First Amendment claim can

be discerned at this time.  Of course, the two-year statute of limitations would also be applicable. Dismissal of these potential claims should be considered as being without prejudice.

## Count 8

In Count 8, Plaintiff asserts that he was "illegally and improperly convicted of a disciplinary violation in early 2010 (possibly two convictions) because he could not access materials from his excess legal box, which he characterizes as "double jeopardy."  As pleaded, Count 8 fails to state a colorable constitutional claim—it fails to meet the *Twombly* pleading standard.  In any event, the complaint does make clear that Plaintiff's grievance regarding the events underlying Count 8 was denied by the ARB in June 2010.  Again, this action was filed in 2014, well outside the two-year statute of limitations period.  Count 8, therefore, will be dismissed with prejudice.

## Count 9

Count 9 alleges that Plaintiff is being illegally charged for copies of documents sought via the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. (and in violation of an Illinois statute, for which Plaintiff does not offer a correct citation).    However, a violation of FOIA or a state statute, alone, does not violate the Constitution; thus, Count 9 fails to state a claim actionable under Section 1983.  *See Whitman v. Nesic,* 368 F.3d 931, 935 n.1 (7th Cir. 2004).  Therefore, the FOIA claim asserted in Count 9 will be dismissed with prejudice.

Insofar as Plaintiff may be attempting to state a First Amendment claim, he has again failed to link the denial of free copies to any "actual injury"—meaning the inability to pursue a non-frivolous claim.  *See Lewis v. Casey,* 518 U.S. 343 (1996); *May v. Sheahan,* 226 F.3d 876, 883 (7th Cir.2000); *Walters v. Edgar,* 163 F.3d 430, 434 (7th Cir.1998).  The First Amendment aspects of Count 9 will be dismissed without prejudice.

**Count 10**

Count 10 alleges that while Plaintiff was housed at Big Muddy River Correctional Center in 2009, and at Pinckneyville Correctional Center in 2010, he was required to make a co-payment for medical and dental care, in violation of administrative directives and Illinois law. Again, the violation of administrative directives and state law, alone, does not violate the Constitution, so Plaintiff has failed to state a Section 1983 claim.  *See Whitman v. Nesic,* 368 F.3d 931, 935 n.1 (7th Cir. 2004).  Plaintiff could possibly by aiming at an Eighth Amendment claim for deliberate indifference to a serious medical need (*see Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Farmer v. Brennan,* 511 U.S. 825 (1994)), but in that respect Count 10 does not meet the *Twombly* pleading threshold—no serious medical or dental need is mentioned.  In any event, the complaint makes clear that Plaintiff exhausted available administrative remedies in September 2009 relative to the Big Muddy incidents, and in September 2010 relative to the Pinckneyville incidents.  Because this action was not filed until 2014, Count 10 falls well outside the two-year statute of limitations period in all respects.  Therefore, Count 10 will be dismissed with prejudice.

**Count 11**

Count 11 pertains to the confiscation of Plaintiff's television in 2008.  Plaintiff exhausted administrative remedies in January 2009, and a second grievance was exhausted in April 2009. Because this action was not filed until 2014, Count 11 falls well outside the two-year statute of limitations period.  Furthermore, to state a claim under the due process clause of the Fourteenth Amendment, a plaintiff must establish a deprivation of liberty or property without due process of law.  If the state provides an adequate remedy, the plaintiff has no civil rights claim.  *Hudson v. Palmer,* 468 U.S. 517, 530–36 (1984) (availability of damages remedy in state claims court is an

adequate, post-deprivation remedy).   The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington,* 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis,* 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILCS § 505/8.   Accordingly, Plaintiff cannot maintain a civil rights claim in this Court for the deprivation of his television.   Therefore, Count 11 will be dismissed with prejudice.

## Count 12

Count 12 pertains to numerous instances between February 2010 and June 2013, when Plaintiff was deprived of his personal property, e.g., a copy of a grievance was taken from Plaintiff's property box; a light bulb in Plaintiff's property box was broken; and a stored  excess legal box disappeared.   As discussed relative to Count 11, Plaintiff's potential Fourteenth Amendment claim fails because he has an adequate post-deprivation remedy in the Illinois Court of Claims.  *Murdock v. Washington,* 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis,* 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILCS § 505/8.   Therefore, Count 12 will be dismissed with prejudice.

## Count 13

In Count 13, Plaintiff complains that when he was placed in investigative segregation (before ever being convicted of a disciplinary infraction), he was denied his audiovisual privileges.   The segregation cell Plaintiff was in had no electrical outlet or cable connection. Plaintiff exhausted his administrative remedies in September 2011.   This action was not filed until 2014, outside the two-year statute of limitations period.   Furthermore, there is no constitutional right to audiovisual privileges. *See, e.g., Murphy v. Walker,* 51 F.3d 714, 718 (7th

Cir.1995) (pretrial detainee had no constitutional right to television).   Therefore, Count 13 will

be dismissed with prejudice.

**Count 14**

Count 14 revolves around Plaintiff being denied haircuts during a four month period in

2009, in violation of 730 ILCS 5/3-7-2(a) (which provides that inmates are to be afforded access

to a barbershop).   According to the complaint, Plaintiff's administrative remedies were exhausted

by October 2010.   The complaint was not filed in 2014, well beyond the two-year statute of

limitations cutoff.   Furthermore, Department of Corrections' regulations and the Illinois Unified

Code of Corrections were "designed to provide guidance to prison officials in the administration

of prisons," not to confer rights on inmates.   *Ashley v. Snyder*, 739 N.E.2d 897, 902 (Ill. App. 4th

Dist. 2000); *see McNeil v. Carter*, 742 N.E.2d 1277 (Ill.App.3d 2001).   As noted in *Ashley*,   in

*Sandin v. Conner*, 515 U.S. 472, 477–84 (1995), the United States Supreme Court held that

states cannot create enforceable liberty interests in freedom from the routine deprivations and

discomforts of prison life.   739 N.E.2d at 900-01.   Also, failure of prison officials to follow state

rules or administrative regulations does not give rise to a constitutional claim.   *Pasiewicz v. Lake*

*Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).   Therefore, Count 14 will be

dismissed with prejudice.

**Count 15**

Count 15 pertains to Plaintiff being denied weather-appropriate clothing while he was

housed at Big Muddy River Correctional Center in 2008.   Although a colorable Eighth

Amendment claim has been stated, it is untimely.   According to the complaint, Plaintiff

acknowledges that by September 2009 he had exhausted available administrative remedies

(because the ARB had failed to respond to his appeal of the denial of his institutional grievance).

This action was filed in 2014, well beyond the two-year limitations period. Therefore, Count 15 will be dismissed with prejudice.

**<u>Count 16</u>**

In Count 16, Plaintiff contends he was not allowed to wear personal clothing (a jean jacket) to go to the Big Muddy River Correctional Center dining hall in October 2010. Plaintiff knows of no administrative regulation that prohibits him from wearing his personal jacket, as opposed to a state-issued coat. Plaintiff's state-issued coat was unavailable because it was in the laundry, and it was cold and rainy. According to the complaint, Plaintiff's administrative remedies were exhausted in March 2011, when the ARB denied his appeal. This action was filed in 2014, well beyond the two-year limitations period.

Count 16 also includes allegations of similar disputes over clothing while Plaintiff was at Pinckneyville Correctional Center in 2010. Plaintiff exhausted administrative remedies on that issue by March 2011—again, outside the two-year statute of limitations.

A third incident regarding what type of coat Plaintiff was allowed to wear occurred in December 2012, while Plaintiff was housed at Lawrence Correctional Center. Relative to the situation at Lawrence, Plaintiff was told that he could not possess his own jean jacket, even though Lawrence issued inmates a similar jean jacket. This claim does not appear to be barred by the statute of limitations. Although the Eighth Amendment guarantees an inmate *adequate* food, clothing and shelter (*see Sain v. Wood,* 512 F.3d 886, 893 (7th Cir.2008)), that does not mean Plaintiff has a right to the wardrobe of his choice. These allegations do not implicate a Constitutional right; in fact, Plaintiff only asserts that a prison directive was violated.

For the reasons stated, Count 16 will be dismissed with prejudice in all respects.

**Count 17**

In Count 17 it is alleged that the general library was not open at Pinckneyville Correctional Center in 2010, while Plaintiff was housed there.  According to the complaint, Plaintiff exhausted his administrative remedies (two grievances) by September 2011.  This action was filed in 2014, beyond the two-year limitations period.  Therefore, Count 17 will be dismissed with prejudice.

**Count 18**

In Count 18, Plaintiff alleges that more than 10 grievances submitted directly to the grievance officer in February and March 2010, while he was housed at Big Muddy River Correctional Center, were answered by Plaintiff's counselor instead.   According to the complaint, Plaintiff's grievance regarding the handling of his grievances was exhausted in October 2010, when the ARB failed to respond.  This action was filed in 2014, beyond the two-year limitations period.  Moreover, the Constitution does not require prisons to have administrative systems for the redress of grievances.  *See Owens v. Hinsley,* 635 F.3d 950, 953–54 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 772 n. 3 (7th Cir. 2008).  Therefore, interference with that administrative process is not, by itself, a constitutional violation.  For these reasons, Count 18 will be dismissed with prejudice.

**Count 19**

In Count 19 Plaintiff asserts that in July 2010 his cellmate was moved to a different cell and took Plaintiff's appellate brief with him.  Plaintiff was in mid-appeal and asked a counselor to retrieve the brief.   The counselor refused, explaining that he could not pass items between inmates.  Plaintiff initiated the grievance process in July 2010, but the outcome at the institutional level is unclear.  In any event, in January 2011 the ARB "refused the grievance

because it was untimely, thereby concluding the remedy process.  This action was brought in January 2014, well outside the two-year statute of limitations period.  Therefore, Count 19 will be dismissed with prejudice.

## Count 20

Count 20 pertains to four grievances Plaintiff pursued while housed at Pinckneyville Correctional Center in 2011, which were denied by the ARB as untimely.  Plaintiff asserts that he had followed all administrative directives.  Again, the Constitution does not require prisons to have administrative systems for the redress of grievances.  *See Owens v. Hinsley,* 635 F.3d 950, 953–54 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 772 n. 3 (7th Cir. 2008).  Therefore, interference with that administrative process is not, by itself, a constitutional violation.  Count 20 will, therefore, be dismissed with prejudice.

## Count 21

In relation to Count 21, Plaintiff alleges that for a 33-hour period spanning September 5-6, 2010, while he was housed at Pinckneyville Correctional Center, the water to his cell—to the toilet and sink—was shutoff, and he was not given any water to drink.  Although these allegations are adequate to state an Eighth Amendment claim, Count 20 is untimely.  The complaint indicates that Plaintiff's grievance was exhausted by March 2011, when the ARB ruled that it had been appropriately handled at the institutional level.   This action was filed in 2014, well beyond the two-year limitations period applicable to the 2010 incident at Pinckneyville.

The narrative underpinning Count 20 also describes Plaintiff being denied hot water for a two-week period in October 2013, while he was housed at Lawrence Correctional Center.

According to Plaintiff, this affected his hygiene in terms of being able to wash his hands after using the toilet, and he supposedly caught two colds as a result.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.  *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).  Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation, and physical safety.  *See Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also James v. Milwaukee County,* 956 F.2d 696, 699 (7th Cir. 1992).  Plaintiff's allegations touch upon sanitation and health.

In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims.  *See McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir.1994); *Wilson v. Seiter,* 501 U.S. 294, 302 (1991).  The objective analysis examines whether the conditions of confinement "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir.1994).  The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).  However, prisoners cannot expect the "amenities, conveniences, and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988).[2]

It is alleged that Plaintiff was denied hot water for two weeks.  He does not allege that he was denied cold water and soap, the key components to hygiene.  *See* www.mayoclinic.org/hand-washing/art-20046253 (last accessed Feb. 10, 2014) ("Hand-washing

---

[2]  "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise...." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  However, Count 20 only pertains to a single condition, the lack of hot water.

requires only soap and water or an alcohol-based sanitizer…."  Hot water is not required.).  *See also* www.cdc.gov/handwashing (last accessed Feb. 10. 2014) (warm or cold water may be used to wash one's hands.).  Therefore, Plaintiff having to wash his hands using cold water for two weeks is a matter of comfort, not hygiene—not offending the contemporary bounds of decency and not rising to the level of a constitutional violation.  C*ontrast Johnson v. Pelker,* 891 F.2d 136, 139-40 (7th Cir.1989) (leaving a prisoner in a cell for three days without running water, dry clothing, bedding, or cleaning supplies, and in which feces were smeared on the walls, may fall below the threshold of decency set by the Eighth Amendment).  Therefore, Count 21 will be dismissed with prejudice.

## Severance

At this juncture <u>no</u> colorable constitutional claims have been stated in the complaint, as drafted.  Therefore, the complaint will be dismissed.  *Possible* constitutional claims have been spotted within Counts 3 and 9, and those aspects of those two counts will be dismissed without prejudice—meaning that Plaintiff can attempt to re-plead those claims.  However, another potential problem looms on the horizon for Plaintiff: those claims cannot proceed in the same case.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George*, 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)).  The relevant allegations in Count 3 pertain to assaults and the denial of protective custody at (a) Menard Correctional Center, and (b) Lawrence Correctional Center; and the remaining allegation in Count 9 pertains to the denial of free copies in violation

of the First Amendment.   None of these three potential claims are in any way related. Consequently, *if* Plaintiff elects to proceed with any of these three claims, each claim must be brought in a separate action.

Because the three possible claims that may proceed are so tentative, and because it does not appear that the statute of limitations deadlines are in the immediate future, a period of time will be allotted for filing an amended complaint.   Any amended complaint will be reviewed pursuant to Section 1915A, and if necessary, the Court will formally sever claims at that time. Plaintiff must keep in mind that if severance is necessary, additional filing fees will be incurred, as already discussed.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, Plaintiff's motion for leave to file a "late complaint" (Doc. 2) is **DENIED**.

**IT IS FURTHER ORDERED** that **COUNTS 1-2, 4-8, 10-21** are all **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED with prejudice** relative to claims regarding the denial of protective custody at Pinckneyville Correctional Center, **and without prejudice** relative to claims regarding assaults and the denial of protective custody at Menard Correctional Center and Lawrence Correctional Center.

**IT IS FURTHER ORDERED** that **COUNT 9** is **DISMISSED with prejudice** relative to FOIA violations; possible related First Amendment claims are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **ALL DEFENDANTS** are **DISMISSED**, as no colorable claim has been pleaded against any Defendant.

**IT IS FURTHER ORDERED** that on or before **March 17, 2014**, Plaintiff shall file an amended complaint, which shall be limited to claims arising from surviving allegations in Count 3 and 9 of the original complaint.  Failure to file an amended complaint by the prescribed deadline will likely result in the dismissal of this action in its entirety, for failure to comply with a court order.  *See* FED.R.CIV.P. 41(b).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 13, 2014**

*s/ J. Phil Gilbert*
United States District Judge