## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JAMES OWENS,** | ) | |
| No. K83253, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-00055-JPG** |
| | ) | |
| **MIKE ATCHISON,** | ) | |
| **JOHN DOE 1,** | ) | |
| **JOHN DOE 2,** | ) | |
| **JOHN DOE 3,** | ) | |
| **JOHN DOE 4,** | ) | |
| **JOHN DOE 5,** | ) | |
| **JOHN DOE 6,** | ) | |
| **JOHN DOE 7,** | ) | |
| **JOHN DOE 8,** | ) | |
| **JOHN DOE 9,** | ) | |
| **JOHN DOE 10,** | ) | |
| **JOHN DOE 11,** | ) | |
| **JOHN DOE 12,** | ) | |
| **JOHN DOE 13,** | ) | |
| **JOHN DOE 14,** | ) | |
| **JOHN DOE 15,** | ) | |
| **PHOENIX, and** | ) | |
| **OFFICER WELLS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff James Owens, an inmate currently housed at Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.  His original complaint (Doc. 1) was dismissed and he was granted leave to file an amended complaint, albeit limited to dramatically fewer claims and defendants (*see* Doc. 6).

## Timeliness of the Amended Complaint

As a preliminary matter, the Court must determine whether the amended complaint (Doc. 14) was timely filed.

Plaintiff missed the initial deadline for filing an amended complaint, but the Court granted him an extension, which he also failed to meet (*see* Docs. 6, 12).  Four days after the prescribed deadline, a motion for an extension of time was filed (Doc. 13). Plaintiff explained that he had not received the Court's order until mere days before the new deadline.  The amended complaint was ultimately filed 23 days late.

For good cause shown, Plaintiff's motion for an extension of time to file the amended complaint (Doc. 13) is **GRANTED**; thus, the amended complaint (Doc. 14) is deemed timely.

## The Standard of Review

The amended complaint (Doc. 14) is now before the Court for a preliminary review of pursuant to 28 U.S.C. § 1915A.  The Court is required to dismiss any portion of the amended pleading that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit."  *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility.  *Id*. at 557.  At this juncture, the factual

allegations of the *pro se* pleading are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 821 (7th Cir. 2009).

## The Amended Complaint

Plaintiff was limited to presenting only claims regarding assaults and the denial of protective custody at Menard (*see* Doc. 6, p. 21).  He has taken full advantage of the opportunity to amend his pleading by attempting to link multiple claims by way of alleging conspiracy and retliation.

According to the amended complaint (Doc. 14), in 2005 Plaintiff was granted protective custody and administratively removed from Menard Correctional Center ("Menard") because he had "enemies" there.  It is not entirely clear, but there may have been some connection between Plaintiff's move from Menard and a civil rights action he lodged against Menard personnel.

In 2011, when Plaintiff requested protective custody at Pinckneyville Correctional Center ("Pinckneyville"), there was nowhere to place him, except in disciplinary segregation.  He was held there for nine months.  Despite the fact that in 2005 Plaintiff had been ordered removed from his enemies at Menard, and despite Plaintiff having filed suit against Menard staff, Transfer Coordinator John Doe #3 directed that Plaintiff be transferred back to Menard.  On December 21, 2011, John Doe#1 and John Doe #2 removed Plaintiff from his cell, shackled him, and transported him from Pinckneyville to Menard.

Upon his arrival at Menard, Plaintiff was "verbally and physically assaulted" by six correctional officers, John Does #4-9 (Doc. 14, p. 4).  The next day, while Plaintiff was cuffed and being moved by John Doe #10, John Doe #11 struck Plaintiff in the face—once with an open hand, and a second time with a closed fist.

A month after Plaintiff's arrival at Menard, he was released from segregation, but his request for placement in protective custody was denied. John Doe #12, without apparent cause, assigned Plaintiff to the east cellhouse, which is designated for medium-to-high aggression inmates; Plaintiff had been characterized as a low aggression inmate.

In October 2012, Plaintiff was celled with inmate Pleasant, who had never before been celled with a white inmate. Pleasant destroyed Plaintiff's personal property and stole his food. Plaintiff complained but was not moved, so he commenced a hunger strike. Plaintiff could not get Warden Atchison, or an unidentified lieutenant to comply with administrative directives regarding hunger strikes (no details are offered in the amended complaint). On the tenth day of what turned out to be an eleven-day hunger strike, Plaintiff was taken to the health care unit; his ketone levels were high. While in the health care unit, Plaintiff asked John Does #14 and 15 for protective custody, to no avail. Plaintiff also asked Officer (Sgt.) Wells. Wells refused the request, but instructed Plaintiff to ask the cellhouse sergeant when Plaintiff returned from the health care unit. Ultimately, Plaintiff was not allowed to speak to the cellhouse sergeant; instead, he was forced back into the cell with inmate Pleasant (by whom is unknown).

On November 24, 2012, Plaintiff asked Counselor Phoenix for protective custody placement. Phoenix promised to send Plaintiff the form, but Plaintiff never received it. Plaintiff remained celled with inmate Pleasant until December 21, 2012, when Plaintiff was transferred to Lawrence Correctional Center for no apparent reason.

Based on the allegations in the amended complaint, and Plaintiff's own general description of his legal claims, the Court finds it convenient to divide the *pro se* pleading into the following counts. The parties and the Court will use these designations in all future pleadings

and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these

counts does not constitute an opinion as to their merit.

> **Count 1:  All Defendants conspired to violate Plaintiff's constitutional rights;**

> **Count 2:  All Defendants acted in retaliation for Plaintiff having filed suit against Menard staff or for exercising his right to go on a hunger strike, all in violation of the First Amendment;**

> **Count 3:  John Doe #3, the Transfer Coordinator, transferred Plaintiff back to Menard, in violation of the Eighth Amendment;**

> **Count 4:  John Does #1 and #2 shackled Plaintiff, removed him from his cell and transferred him to Menard, all in violation of the Eighth Amendment;**

> **Count 5:  John Does #4-9 verbally and physically assaulted Plaintiff, in violation of the Eighth Amendment;**

> **Count 6:  John Doe #11 struck a handcuffed Plaintiff in the face, while John Doe #10 held Plaintiff, all in violation of the Eighth Amendment;**

> **Count 7:  John Doe #12 assigned Plaintiff to the east cellhouse, and to be celled with inmate Pleasant, in violation of the Eighth Amendment;**

> **Count 8:  Warden Atchison and other staff failed to comply with administrative directives regarding hunger strikes;**

> **Count 9:  John Does #14 and #15, and Officer (Sgt.) Wells refused Plaintiff's requests for protective custody, in violation of the Eighth Amendment;**

> **Count 10: Counselor Phoenix failed to send Plaintiff the form needed to request protective custody, in violation of the Eighth Amendment; and**

> **Count 11: Plaintiff was transferred from Menard to Lawrence without cause.**

### Discussion

### Count 1

Plaintiff claims the defendants acted in conspiracy (*see* Doc. 14, p. 6).  Claims of

conspiracy necessarily require a certain amount of factual underpinning to survive preliminary

review.  *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*,

457 F.3d 711, 716 (7th Cir. 2006)).   "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him."  *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304–05 (7th Cir. 2011).  "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives."  *Id.* at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)).

The amended complaint offers only a bald assertion of conspiracy.  There is no circumstantial basis for reasonably inferring that the defendants acted in conspiracy.  Therefore, Count 1 will be dismissed without prejudice.

## Count 2

In Count 2 it is alleged that all defendants acted in retaliation for Plaintiff having filed suit against Menard staff in 2005 and/or for Plaintiff exercising his right to go on a hunger strike in November 2012.

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir.2000). "Otherwise permissible actions by prison officials can become impermissible if done for retaliatory reasons." *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000).  Although only notice pleading is required, it is helpful to keep in mind that in order to prove a claim of retaliation for exercising one's First Amendment right, a plaintiff must demonstrate that: "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor" behind the retaliatory actions.  *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006).  Circumstantial evidence—evidence from which a trier of fact

may infer that retaliation occurred—can be used to establish a retaliation claim.   *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012).

Count 2 fails under the *Twombly* pleading standard relative to any claim premised upon Plaintiff having filed suit in 2005 against Menard staff.   Such a law suit is protected under the First Amendment.  *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005).  And, the Court will assume that the acts against Plaintiff were sufficient to deter First Amendment activity.  However, there is nothing from which to reasonably infer that any of the 18 named defendants knew of the suit or had a retaliatory motive.  It is impossible to move the claim from the possible to the plausible in this particular situation, where there is no specific allegation that any particular defendant acted in retaliation, and the six or seven year time gap between the suit and the events at issue make the claim so tenuous—which is not to say that such a long time gap is dispositive.

Relative to retaliation based upon Plaintiff going on a hunger strike in November 2012, the group of defendants who encountered Plaintiff at the time of, or after, the hunger strike is limited to those implicated in Counts 8-10:  Warden Atchison, John Does #14 and #15, Officer Wells, and Counselor Phoenix.  The hunger strike appears to be activity protected under the First Amendment.  *See Stefanoff v. Hays County, Tex.*, 154 F.3d 523, 527 (5th Cir. 1998) (hunger strike may be protected activity if aimed at conveying a particularized message); *see also Texas v. Johnson*, 491 U.S. 397 (1989) (discussing expressive conduct).  Whether each Defendant acted with the necessary motive remains to be seen.  In any event, the action or inaction of each of those defendants—as pleaded—cannot reasonably be said to be of the sort that would deter further First Amendment activity.  Warden Atchison failed to comply with administrative directives  regarding hunger strikes, which has no obvious impact upon Plaintiff.  John Does #14

and #15, and Officer Wells, all denied Plaintiff protective custody while Plaintiff was in the health care unit, which he did not allege posed a danger to him.  Counselor Phoenix did not send Plaintiff a form for requesting protective custody, but Plaintiff was not in physical danger from his cellmate (*see* Count 7).

Count 2 will, therefore, be dismissed without prejudice.

## Count 3

Count 3 pertains to IDOC Transfer Coordinator John Doe #3, who in 2011 ordered Plaintiff transferred from Pinckneyville back to Menard, despite Plaintiff having been administratively removed from that prison in 2005, and without regard to Plaintiff having filed suit against Menard staff.

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.   U.S.CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).   Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety.   *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Furthermore, prison officials have a duty to protect prisoners "from violence at the hands of other inmates." *See Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002).   However, as a general matter, a prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  That the officer had actual knowledge of impending harm can be inferred from circumstantial evidence.  *Id*. at 842.  Proving deliberate indifference requires more than a showing of negligent or even grossly

negligent behavior.  *Id*. at 835.  Rather, the defendant must have acted with the equivalent of criminal recklessness.  *Id*. at 836–37.

Although Plaintiff explains that there was nowhere to house him in protective custody at Pinckneyville, it is possible that John Doe #3 acted with deliberate indifference to the fact that Plaintiff had enemies at Menard (inmates and staff).  John Doe #3, as Transfer Coordinator, could have known about Plaintiff's transfer out of Menard, and possibly even the law suit.  At this early juncture, there is insufficient information before the Court to definitively rule on this claim.  Count 3 shall proceed.

## Count 4

Count 4 pertains to John Doe#1 and John Doe #2 removing Plaintiff from his cell at Pinckneyville, shackling him, and transporting him to Menard.  That behavior alone does not suggest deliberate indifference to Plaintiff's safety, excessive force, or any other constitutional violation.  Count 4 will, therefore be dismissed without prejudice.

## Count 5

The basis for Count 5 is the "verbal and physical assault" by correctional officers John Does #4-9 upon Plaintiff's arrival at Menard.  The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment.  *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).  However, without a bit more detail no constitutional claim is stated under the *Twombly* pleading standard.  Count 5 will be dismissed without prejudice.

## Count 6

Count 6 alleges that while Plaintiff was cuffed and being moved by John Doe #10, John Doe #11 struck Plaintiff in the face—once with an open hand, and a second time with a closed

fist.   The fact that Plaintiff was handcuffed reasonably opens up the possibility that unnecessary and excessive force may have been used by John Doe #11.  John Doe #10 may also face liability because a correctional officer who stands by and watches while another officer uses excessive force may be liable under the Eighth Amendment (*see  Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)).  Count 6 shall, therefore, proceed.

## Count 7

Count 7 revolves around the allegations that John Doe #12, without apparent cause, assigned Plaintiff to the east cellhouse, which is designated for medium-to-high aggression inmates and Plaintiff is a low aggression inmate.   Furthermore, Plaintiff was celled with inmate Pleasant, who had never before been celled with a white inmate.  Pleasant destroyed Plaintiff's personal property and stole his food.  Count 7 is construed as asserting that prison officials were deliberately indifferent to a substantial risk of serious harm, in violation of the Eighth Amendment.  Any other intended constitutional claim should be considered dismissed without prejudice.

As a preliminary matter, insofar as Plaintiff implies that it was wrong to house inmates of different races together, the Supreme Court has cautioned against segregating inmates based on race.  *See Johnson v. California*, 543 U.S. 499, (2005) (government imposed racial classification is subject to strict scrutiny, even when the purported rationale is prison security); *Lindell v. Houser*, 442 F.3d 1033, 1035-36 (7th Cir. 2006).

"[P]risoners possess neither liberty nor property in their classifications and prison assignments.  States may move their charges to any prison in the system."  *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)).  *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee

placement in a particular prison).[1]  Therefore, Plaintiff's abrupt reassignment to a different cell, and celling him with an inmate with a higher security classification, alone, does not offend the Constitution.

There are no allegations that inmate Pleasant threatened physical harm or otherwise posed a danger to Plaintiff's safety.  Rather, the only thing alleged is that Pleasant stole and/or destroyed Plaintiff's personal property, which is not a constitutional violation.  If the state provides an adequate remedy, the plaintiff has no civil rights claim.  *Hudson v. Palmer,* 468 U.S. 517, 530–36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).  The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims.  *Murdock v. Washington,* 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis,* 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILCS § 505/8.

For all of these reasons, Count 7 will be dismissed with prejudice.

## Count 8

It is alleged that Warden Atchison and other staff (an unidentified lieutenant and unspecified others) failed to comply with administrative directives regarding hunger strikes.  The noncompliance is not described in any detail whatsoever.  In any event, the violations of internal policies and procedures, as well as state rules or laws, does not give rise to a constitutional violation.  *See Whitman v. Nesic,* 368 F.3d 931, 935 n.1 (7th Cir. 2004).  Therefore,  Count 8 will be dismissed with prejudice.

---

[1] The caveat to this rule – involving transfer or assignment to a prison where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" – does not apply here.  *See Westefer v. Snyder*, Civil No. 00-162-GPM (S.D. Ill. decided July 20, 2010), *citing Sandin v. Conner*, 515 U.S. 472 (1995).

**Count 9**

Count 9 also appears to be premised upon Plaintiff's efforts to secure protective custody in order to get away from inmate Pleasant, who was stealing and/or destroying his property. While in the health care unit, Plaintiff asked John Does #14 and #15 for protective custody, to no avail. Plaintiff also asked Officer (Sgt.) Wells. Wells refused the request, but instructed Plaintiff to ask the cellhouse sergeant when Plaintiff returned from the health care unit. Plaintiff has failed to state a colorable Eighth Amendment claim against any of the three defendants to this claim. As explained relative to Count 7, Pleasant did not pose a risk to Plaintiff's safety—only to his property. Furthermore, there is nothing from which to infer deliberate indifference when at the time Plaintiff asked for protective custody he was in the health care unit. If Plaintiff were returned to the cell he could request protective custody, as Officer Wells explained. The only danger Plaintiff faced (elevated ketones) was from a self-created situation, his hunger strike. Count 9 will be dismissed with prejudice.

**Count 10**

Count 10 rests upon Plaintiff asking Counselor Phoenix for protective custody placement and Phoenix not following through on a promise to send Plaintiff the necessary form. As pleaded, Phoenix was, at best, negligent. Neither negligence nor even gross negligence will violate the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Furthermore, as already discussed relative to Count 7, Plaintiff's cellmate, inmate Pleasant, did not pose a danger to Plaintiff that would trigger Eighth Amendment protection. Count 7 will be dismissed without prejudice.

**Count 11**

Insofar as Plaintiff complains that he was transferred from Menard to Lawrence Correctional Center for no apparent reason, the Court cannot help but note that Plaintiff did not want to be at Menard to begin with.  In any event, he has not attributed the transfer decision to any defendant and, as explained relative to Count 7, he has no constitutional right to be housed at any particular prison.  There are no allegations that would trigger a due process analysis under *Sandin v. Conner*, 515 U.S. 472 (1995).  Count 11 will be dismissed without prejudice.

## Severance

At this point, only Count 3 against Transfer Coordinator John Doe #3, and Count 6 against John Does #10 and #11 remain.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George*, 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)).  Counts 3 and 6 have no common defendants and nothing to do with each other.  The two claims must be severed into two separate actions, requiring Plaintiff to pay an additional filing fee.  Plaintiff will be given an opportunity to opt out of the newly severed case without being obligated to pay the second filing fee.

Because none of the remaining defendants is known by name, the current warden of Menard Correctional Center, Kim Butler, shall be named as a defendant in her official capacity for the sole purpose of discovering the identities of the "John Doe" defendants.  Time will be allotted for discovery related to securing those identities.

## Disposition

IT IS HEREBY ORDERED that, Plaintiff's motion for an extension of time to file the amended complaint (Doc. 13) is **GRANTED**; the amended complaint (Doc. 14) is deemed timely.

IT IS FURTHER ORDERED that **COUNTS 7, 8 and 9 are DISMISSED with prejudice**.

IT IS FURTHER ORDERED that **COUNTS 1, 4, 5, 10 and 11 are DISMISSED without prejudice.**

IT IS FURTHER ORDERED that Defendants **WARDEN MIKE ATCHISON, JOHN DOES #1-2, 4-9 and 12-15, COUNSELOR PHOENIX and OFFICER WELLS are all DISMISSED without prejudice**.

IT IS FURTHER ORDERED that the Warden of Menard Correctional Center, **Kim Butler, is hereby named as a defendant to COUNTS 3 and 6, in her official capacity**, for the sole purpose of discovering the identities of the "John Doe" defendants

IT IS FURTHER ORDERED that **COUNT 3 against Transfer Coordinator John Doe #3 and KIM BUTLER, and COUNT 6 against JOHN DOES # 10 and #11 and KIM BUTLER, shall PROCEED**; however, **COUNT 6 shall be SEVERED into a new case**.

The Clerk of Court is **DIRECTED** to open a new case relative to **COUNT 6 against JOHN DOES # 10 and #11 and KIM BUTLER (in her official capacity, solely for the purpose of identifying the identities of the other defendants)**. A district judge shall be randomly assigned to the new case.

The Court will await Plaintiff's filing regarding whether he wants to proceed with the new case (*in re* Count 6) before proceeding with a referral order and service of the summons and

complaint upon Warden Butler. No motions filed relative to the original case will be incorporated into the new case; therefore, for example, if Plaintiff wants to proceed as a pauper in the new case he must file a motion in that case.

**IT IS FURTHER ORDERED** that on or before **April 11, 2015**, Plaintiff shall state in a writing whether he desires to proceed in the new case relative to Count 6, <u>or</u> he shall move for the voluntary dismissal of that case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). No filing fee will be assessed in the new case *if* it is voluntarily dismissed. If Plaintiff elects to proceed with the new case, he must simultaneously file in that case a new motion for leave to proceed *in forma pauperis*, or pay the filing fee in full at that time. Failure to comply with this directive will result in the dismissal of the new case and the filing fee will then be automatically assessed.

**IT IS FURTHER ORDERED** that, with respect to the present case **(Case No. 14-cv-00055-JPG) <u>only</u>**:

The Clerk of Court shall prepare for Defendant **KIM BUTLER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to send these forms, a copy of the amended complaint, and this Memorandum and Order to Defendant Warden Butler at Menard Correctional Center.

Service shall not be made on Defendant "John Doe #3 until such time as Plaintiff has identified him/her by name in a properly filed (second) amended complaint. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

If Defendant Warden Butler fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take

appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Warden Butler no longer can be found at Menard Correctional Center, the institution shall inform the Court and provide the Court with the name of the current warden of the prison.

Plaintiff shall serve upon Defendant(s) (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant(s) or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant Warden Kim Butler is **ORDERED** to timely file an appropriate responsive pleading to the amended complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). In this unusual situation, the responsive pleading is intended to confirm Warden Butler's entry into the case in her official capacity, thereby triggering the assigned magistrate judge to commence efforts to learn the identity of John Doe #3.

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States magistrate judge for further pre-trial proceedings, including discovery specifically aimed at identifying John Doe #3.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 24, 2015**

*s/J. Phil Gilbert*
**United States District Judge**